### Carter Coal Company v. Hill.

(Decided October 31, 1916.)

Appeal from Knox Circuit Court.

1. Appeal and Error—Law of the Case.—The opinion upon the first appeal of a case stated the law of the case for all subsequent pro-

ceedings; it is binding upon the circuit court and the Court of Appeals, alike.

2. Appeal and Error—Failure to Submit Issue Directed.—Where the Court of Appeals reversed a judgment and directed the circuit court, upon another trial, to submit two specified issues to the jury, the failure of the trial court, upon the second trial, and under substantially the same evidence, to submit the questions as directed by the Court of Appeals, requires the judgment to be reversed.

P. D. BLACK and BLACK, BLACK & OWENS for appellant.

ELI H. BROWN, JR., and GOLDEN & LAY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Reversing.

This is the second appeal of this case; see 166 Ky. 214, for the opinion upon the former appeal.

The facts are stated in detail in the former opinion; but in order to understand this opinion, it may be profitable to repeat them, briefly.

Brooks had a contract to mine coal for the appellant company, at a stipulated price per ton. Hill, Gaylor and Detherage worked for Brooks. Hill, a miner of fifteen years' experience, was directed by Brooks to go to work in a room neck, about nine or ten feet wide. Hill began working, and shortly thereafter he was injured by a large piece of slate falling from the roof upon him. The roof of the neck where Hill was at work could have been protected by cross timbers and jack posts; and, in the former opinion, it was stated that it was the duty of the company to do that work.

Upon the first trial Brooks, the contractor, said it was his duty to do all straight timbering, that is, to set the jack posts; while Broyles, the timberman in the service of the company, said it was his duty to do the cross timbering up to within twelve feet of the face of the coal, but not to look after the loose slate at the face of the coal, or to set the jack posts. Broyles further testified that the place where Hill was at work when injured, was too close to the face of the coal to permit any cross timbering there.

Other witnesses testified that it was not a part of Hill's duty either to cross timber, set the jack posts, or take down the draw slate.

Hill testified that before going into the room neck he was assured by Broyles that the roof of the room was safe, and that he went to work upon that assurance.

There was testimony to the effect that it was Brooks' duty to take down the draw slate at the face of the coal in the working places.

Section 2739b, subsection 7, of Kentucky Statutes, 1909, in force at the time of the accident, was not applicable, if, by custom or rule of the mine, the duty of propping or timbering did not devolve upon the miner himself. It became necessary, therefore, to determine, by proof, what was the rule or custom of the mine, as to the respective duties of the miner and the mine owner.

In view of the foregoing evidence, the first judgment was reversed for the reasons appearing in the following extracts taken from the former opinion:

"Defendant insists that the trial court erred in assuming in the instructions that it was the duty of the defendant to prop the roof, and, therefore, use ordinary care to make plaintiff's working place reasonably safe. Plaintiff's evidence shows that under the custom of the mine no duty of propping devolved upon him. Defendant insists that the evidence of York, Broyles, Gaylor, Detherage and Brooks, above set forth, shows that it was the duty of the plaintiff and those working with him to do the propping. We have carefully considered the evidence referred to and fail to find any ground for this contention. Brooks says it was his duty, under his contract, to set the jack posts, and a careful reading of the statements of York, Detherage, Gaylor and Broyles shows that the word 'loaders' was used with respect to the contractor and not with respect to the men employed by him to do the work. On the whole, we think the evidence shows that it was the duty of the company to do the propping, but that under the contract between the company and Brooks this duty devolved upon Brooks. Manifestly, if, under the custom of the mine, it was the duty of the company not only to cross timber but to set the props, the responsibility arising from this duty could not be evaded by a contract requiring the contractor to perform the work. If, upon another trial, it should be made to appear that the contractor's employees were themselves charged with the duty of propping or taking down the draw slate, then the question of whose duty it was to do such work under the particular circumstances of this case should be submitted to the jury. Of course, if it was the duty of the plaintiff and those working with him to do this work and they failed to do so, and by reason thereof he was injured, there can be no recovery."

And, upon the subject of the assurance of safety claimed to have been made by Broyles, the court there further said:

"As the duty of cross timbering devolved upon the master, and as this duty was entrusted to Broyles, Broyles became a vice principal and took the place of the master, and his assurance of safety was, in effect, an assurance by the master. It follows that the trial court did not err in giving the instruction referred to. We conclude, however, that the rule should work both ways. Broyles not only says that he did not give plaintiff any assurance of safety, but distinctily told him that the roof was dangerous. If the plaintiff had the right, on the one hand, to rely on Broyles' assurance of safety, he should be required, on the other hand, to heed Broyles' warning of danger, and the jury would be told, in substance, to find for the defendant if Broyles, the timber man, warned plaintiff of the dangerous condition of the roof and of the danger of working thereunder a sufficient length of time before the accident to have enabled plaintiff, by the exercise of ordinary care, to stop work and avoid the peril."

It will thus be noticed that the court reversed the first judgment because the trial court had erred in not submitting to the jury, (1) the question as to whose duty it was to prop the roof and take down the draw slate, and (2) the question whether Broyles had warned Hill of the dangerous condition of the roof.

Upon the second trial the proof upon these questions was somewhat more definite. Thus, it was made more clearly to appear that the word "loaders" desc ibed Hill, Gaylor and Detherage, and not Brooks; and that it was their duty to look after the roof of the working place and to take down any loose slate, or prop it, temporarily. While it is true Hill testified it was the duty of Broyles, the company's timber man, to prop the slate which fell, he is contradicted in this claim by Gaylor and Detherage, who were doing the same kind of work. York, the mine foreman, also testified it was the duty of the men who loaded the coal to take down the slate. And, Broyles testified, unequivocally, that he told Hill the roof was dangerous, and that he ought not to work in the room neck where he was subsequently injured; and in this Broyles is sustained by Gaylor and Detherage.

Instead, however, of submitting these two questions to the jury under appropriate instructions, as the former opinion directed, the court merely copied the instructions it had given upon the first trial, omitting only an immaterial instruction, not now asked, as to the effect of a release. Under these instructions the jury returned a verdict for the plaintiff for $4,150.00. From that judgment the company appeals, insisting that, in view of the explicit evidence as to plaintiff's duty to prop the roof and take down the slate, it was entitled to a directed verdict. But, in view of the contradictory evidence upon these two important points, we think the trial court properly overruled defendant's motion for a peremptory instruction.

It would seem, however, to be hardly necessary for us to repeat the well-established rule that the opinion upon the first appeal stated the law of the case for all subsequent proceedings, and that it is binding upon the circuit court, and this court, alike. Wheeler v. C., N. O. & T. P. Ry. Co., 171 Ky. 436. The importance and necessity of the rule is emphasized by the last judgment in this case, which must, of necessity, be reversed for the failure of the trial court to follow the former opinion.

The contention of counsel for appellee that instruction 3 given upon the last trial is a substantial compliance with the direction of the opinion, is not sustained by the record, since that instruction was precisely the same as instruction No. 3 given upon the first trial. If that instruction had, upon the first trial, submitted the questions above referred to, there would have been no necessity of reversing the first judgment.

It necessarily follows, therefore, that in failing to give the directed instructions upon the second trial, the circuit court was in error.

Judgment reversed for a new trial not inconsistent with this opinion.